Approved: __Vladislav Vainberg /SLA__
VLADISLAV VAINBERG
Assistant United States Attorney

Before:   THE HONORABLE LISA M. SMITH
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x

18 mag 5195

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
| - v. - | Violations of 18 U.S.C. §§ 922(g)(1), 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), 846 |
| JOSHUA CRUZ a/k/a/ TATO, and | |
| MAX OTANO, a/k/a TIO, | COUNTY OF OFFENSE: WESTCHESTER |
| Defendants. | |

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOSEPH McGANN, being duly sworn, deposes and says that he is a Task Force Officer with the Westchester County Safe Streets Task Force, and charges as follows:

**COUNT ONE**
(Narcotics Conspiracy)

1. From at least in or about October 2016 up to and including at least in or about March 2017, in the Southern District of New York and elsewhere, JOSHUA CRUZ a/k/a/ TATO and MAX OTANO, a/k/a/ TIO, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that JOSHUA CRUZ a/k/a/ TATO and MAX OTANO, a/k/a/ TIO, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

3. The controlled substances that JOSHUA CRUZ a/k/a/ TATO and MAX OTANO, a/k/a/ TIO, the defendants, conspired to distribute and possess with the intent to distribute were: (1)

28 grams or more of a mixture or substance which contains cocaine base, and (2) a quantity of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

### COUNT TWO
(Felon in Possession of Ammunition)

4.   On or about February 20, 2017, in the Southern District of New York, MAX OTANO, a/k/a/ TIO, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess, in and affecting commerce, ammunition, firearm, to wit, a GECO 9-millimeter bullet, which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.   I am a Task Force Officer with the Westchester County Safe Streets Task Force.  I have been a Task Force Officer for over 3 years.  I am also detective with the City of Peekskill Police Department, and have been a law enforcement agent for over 17 years.  I am one of the law enforcement agents with primary responsibility for this investigation.  This affidavit is based upon my own observations, my conversations with other law enforcement agents and others, and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.   Based on my involvement in this investigation including direct surveillance, my conversations with a confidential informant ("CI-1")[1] and other law enforcement

---

[1] CI-1 has been working for the FBI and the Peekskill Police Department as a paid informant since 2015. CI-1 has been paid approximately $6,000 in connection with this investigation. CI-1 has no prior felony convictions. However, CI-1 has prior

2

officers who were directly involved in the events described below, and my review of reports and records, I have learned the following:

      a. Based on my conversations with CI-1, I know that CI-1 has met CRUZ and OTANO in the course of purchasing crack cocaine and heroin from another individual ("Individual-1"), who has passed away. Individual-1 told CI-1 that CRUZ and OTANO were Individual-1's suppliers in the Bronx.

      b. The FBI, utilizing CI-1, has completed at least twelve controlled purchases of crack cocaine and/or heroin from CRUZ and OTANO between October 12, 2016 and March 3, 2017 in the Bronx, Elmsford, Peekskill, and Montrose, New York. CRUZ or OTANO were present at each purchase, and both were physically present at two of these purchases.

      c. During each of those twelve controlled purchases, CI-1 was outfitted with an audio or video recording device, and searched for contraband prior to and after the purchase. After completing each purchase, CI-1 turned over the substances received from CRUZ and OTANO to law enforcement. The substances were weighed, tested, and identified by a Drug Enforcement Administration laboratory, as described in lab reports. Based on these lab reports, I know that, as part of this scheme, CRUZ and OTANO sold CI-1 in excess of 40 grams of substances containing cocaine base, and in excess of 10 grams of substances containing heroin. Four of these controlled purchases are described in greater detail below.

The January 7, 2017 Narcotics Purchase

      d. On or about January 7, 2017, CI-1 contacted CRUZ by phone to coordinate a purchase of crack cocaine and heroin. CRUZ instructed CI-1, in part and substance, to go to the vicinity of Lincoln Terrace and Grant Avenue in Peekskill, New York. I and other law enforcement officers outfitted CI-1 with

---

misdemeanor convictions for resisting arrest, petit larceny, aggravated harassment in the second degree, drug and drug paraphernalia possession, criminal mischief: intent to damage property, criminal trespass, possession of a forged instrument, and obstruction of mails generally, all of which precede CI-1's assistance in this investigation. The information that CI-1 has provided in connection with this investigation has proven reliable, and has been independently corroborated by other evidence.

3

an audio recording device, searched CI-1 for contraband, and gave CI-1 $840 in buy money. At approximately 4:11 p.m., CI-1 called CRUZ and told him that he was at the buy location. CRUZ then directed CI-1 to a more precise location in the same vicinity where narcotics were hidden. At that location, CI-1 picked up 7 ziploc bags of suspected crack cocaine and 100 glassines of suspected heroin. CI-1 returned to meet with me to turn over these substances and then called CRUZ to arrange payment. CRUZ then instructed CI-1 to go to a nearby location. There, at approximately 4:34 p.m., CI-1 encountered a vehicle driven by OTANO with CRUZ in the front passenger seat. CI-1 entered the vehicle and paid CRUZ $840. I have reviewed the audio recording of this transaction, on which CRUZ can be heard setting up a future transaction and stating, among other things, "I don't have the hard bagged up right now . . . I got dope on me." The substances obtained in this controlled purchase tested positive for in excess of 1 gram of crack cocaine and 4 grams of heroin.

### The February 1, 2017 Narcotics Purchase

e.  On or about February 1, 2017, CI-1 contacted OTANO by phone to coordinate a purchase of crack cocaine. OTANO instructed CI-1, in part and substance, to go to a location on Lincoln Terrace in Peekskill, New York. I and other law enforcement officers outfitted CI-1 with an audio recording device, searched CI-1 for contraband, and gave CI-1 $1,160 in buy money. At approximately 10:25 p.m., OTANO arrived at the buy location and gave CI-1 a plastic bag with a rock like substance in exchange for $1,160. Based on the laboratory report, I know that the substances obtained in this controlled purchase tested positive for approximately 17 grams of cocaine base.

### The February 20, 2017 Narcotics and Ammunition Purchase

f.  On or about February 20, 2017, CI-1 contacted OTANO by phone to coordinate a purchase of crack cocaine and to obtain ammunition that would fit a 9-millimeter firearm previously purchased by CI-1 from an individual introduced to CI-1 by CRUZ. OTANO told CI-1, in part and substance, that he would give him a bullet to try out for the firearm and instructed him to go to a location on North Saw Mill River Road, in Elmsford, New York. I and other law enforcement officers

4

outfitted CI-1 with a video recording device, searched CI-1 for contraband, and gave CI-1 $480 in buy money.

g. At approximately 12:17 p.m., on or about February 20, 2017, OTANO was observed by law enforcement arriving at the agreed-upon location. CI-1 entered OTANO's vehicle. OTANO then gave CI-1 a bullet and a plastic bag containing a rock like substance in exchange for $480. Based on the laboratory report, I know that the substances obtained in this controlled purchase tested positive for approximately 4 grams of cocaine base.

h. Based on my own experience as a state firearms instructor and my discussions with a special agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, I know that the ammunition provided by OTANO to CI-1 on or about February 20, 2017 is a GECO 9-millimeter bullet manufactured outside the United States.

<u>The March 30, 2017 Transaction</u>

i. On or about March 30, 2017, CI-1 contacted OTANO by phone to coordinate a purchase of crack cocaine. OTANO instructed CI-1, in part and substance, to go to the vicinity of Barker Avenue and Mace Avenue, in the Bronx, New York. I and other law enforcement officers outfitted CI-1 with a video recording device, searched CI-1 for contraband, and gave CI-1 $1,000 in buy money. At approximately 1:33 p.m., OTANO entered the front passenger seat of CI-1's vehicle and directed CI-1 to drive to a nearby location. OTANO then exited the vehicle. At approximately 1:51 p.m., OTANO returned and re-entered CI-1's vehicle, which then proceeded toward a location on Webster Avenue.

j. Based on my review of the video recording made on or about March 30, 2017, I know that OTANO stated to CI-1, among other things, "You have to see the other 'n\*\*\*a', he has to cook it up . . . I called already him." OTANO made a telephone call to an individual believed to be CRUZ, in which he is heard stating, "Yo, bro, jump in the cab. Meet me on Bedford and Webster. I'm going to send you to my mom's crib real quick . . . the baby food shit thing." OTANO then called another phone number and stated, among other things, "Who's home? Put a pot of water on the stove to heat it up". OTANO then made another call to an individual believed to be CRUZ, in which he

5

stated, among other things, "I'm going to leave you bread. He's gonna have everything."

        k. OTANO placed a bag of suspected cocaine in CI-1's vehicle's glove compartment and gave back CI-1 a portion of the $1,000 in buy money to give to CRUZ. Based on my review of the video recording, I know that OTANO instructed CI-1, in part and substance, "When the n***a comes, just give him this," referring to the money, "then go to the glove compartment and give him that," referring to the suspected cocaine. "He will be here in like two minutes." OTANO then departed CI-1's vehicle.

        l. Approximately six minutes later, CRUZ entered CI-1's vehicle, parked in the vicinity of East 201st Street and Decatur Avenue, in the Bronx. Based on my review of the audio/video recording, I know that CI-1 stated to CRUZ, in part and substance, "What's up Pa? . . . We on good terms?" CRUZ responded, in part and substance, "Give me 15 minutes . . . go up two blocks and I will meet you there." CRUZ picked up the money and cocaine left for him by OTANO and left the vehicle.

        m. Approximately 50 minutes later, CRUZ re-entered CI-1's vehicle and gave CI-1 a plastic bag containing a rock-like substance. Based on the laboratory report, I know that this substance tested positive for approximately 15 grams of cocaine base.

        7. I have reviewed criminal history records pertaining to MAX OTANO, a/k/a/ TIO, the defendant, which show that OTANO was convicted on or about September 6, 2013 in Broome County Court, of Criminal Possession of Controlled Substance, in violation of New York Penal Law 220.16, a felony, which is punishable by imprisonment for more than one year.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JOSHUA CRUZ a/k/a/ TATO and MAX OTANO, a/k/a/ TIO, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

---
JOSEPH McGANN
Task Force Officer

Sworn to before me this
16th day of June, 2018

---
THE HONORABLE LISA M. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7